UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| JASON KENT STEERMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action Nos. 1:13-2769 ) ) |
| ALAN D. MOATS, *et al.*, | ) ) |
| Defendants. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 15, 2013, Plaintiff, acting *pro se* and in confinement at Stevens Correctional Center in Welch, West Virginia, filed his Application to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief under 42 U.S.C. §1983.[1] (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Alan D. Moats, Circuit Court Judge; (2) Leckta Poling, Prosecuting Attorney; (3) Allison C. Iapalucci, attorney for Mountaineer Legal Services; (4) Dennis Foreman, Commissioner of West Virginia Parole Board; and (5) Jim Rubenstein, Commissioner of the Division of Corrections. (Document No. 2, p. 4.) Plaintiff alleges that he was place on "supervised bond" from September 2, 2010, until September 27, 2011. (Id., p. 5.) Plaintiff explains that his "supervised bond" required the placement of a "SCAM monitoring bracelet." (Id.) Plaintiff alleges that on September 27, 2011, Judge Moats took Plaintiff off bond supervision and sentenced him to "regular home confinement." (Id.) Plaintiff claims that "Judge Moats granted him all his time while on bond for home confinement." (Id.) Plaintiff states that his

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

home confinement was revoked on January 10, 2012, and Plaintiff was taken to the Regional Jail. (Id.) Plaintiff alleges that Judge Moats granted him credit for time served on home confinement in the Revocation Hearing Order dated February 1, 2012. (Id.) Plaintiff, however, complains that Judge Moats only granted him credit from September 27, 2011 until February 1, 2012. (Id.) Plaintiff argues that Judge Moats should have granted him credit starting from the date he was placed on bond (September 2, 2010). (Id.) Plaintiff, therefore, argues that "Judge Moats has subjected him to false imprisonment making the Plaintiff serve time twice, and by making the Plaintiff serve another year in prison for the time he had already had credit for serving." (Id., p. 6.) Next, Plaintiff further alleges that Judge Moats conspired with the prosecutor to "wrongfully convict and maliciously prosecute the plaintiff." (Id.) Plaintiff further alleges that Prosecutor Leckta Poling subjected him to malicious prosecution and false imprisonment. (Id.)

Third, Plaintiff complains that Attorney Allison Iapalucci provided ineffective assistance of counsel. (Id., p. 7.) Plaintiff contends that Attorney Iapalucci's ineffective representation caused Plaintiff to be falsely imprisoned and subjected to cruel and unusual punishment. (Id.)

Fourth, Plaintiff asserts that Dennis Foreman and the Parole Board have subjected him to discrimination, embarrassment, humiliation, and harassment. (Id.) Plaintiff contends that he was denied parole because he "did not have enough time in." (Id.) Plaintiff, however, complains that other inmates with "very little DOC time" were granted parole. (Id.) Plaintiff, therefore, contends that Defendant Foreman subjected him to cruel and unusual punishment by denying him parole. (Id.) Plaintiff states that Defendant Foreman and the Parole Board are using the prison system as a homeless shelter and are responsible for the over crowding problem within the prison. (Id., p. 8.)

Finally, Plaintiff complains that Jim Rubenstein has allowed him to be subjected cruel and

unusual punishment. (Id., p. 8.) Specifically, Plaintiff asserts that he has been subjected to food deprivation, inadequate ventilation, unsanitary living conditions, excessive noise, sleep deprivation, and exposure to insects and rodents. (Id.) Plaintiff alleges that Defendant Rubenstein "does not acknowledge grievances and grievance procedures filed by inmates." (Id., p. 8.) As relief, Plaintiff requests monetary damages. (Id., p. 9.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the

3

Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1.      **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002),

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

*aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue

5

administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court....The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures

whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response is unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response is unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete.

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 2, pp. 3 and 8.) Plaintiff appears to contend that he should be excused from exhaustion because any attempt to exhaust would be futile. (Id.) Specifically, Plaintiff argues that prison staff fail to properly respond to administrative remedy requests and there is "no jurisdiction." (Id.) The United States Supreme Court, however, has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[3] Booth v. Churner, 532 U.S.

---

[3] Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that

741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Furthermore, the "[f]ailure to receive a response is not an excuse for not moving to the next level of the grievance procedure." Nally v. King, 2013 WL 594709 * 3 (N.D.W.Va. Jan. 3, 2013); Cremeans v. Villers, 2012 WL 2359831 *3 (N.D.W.Va. May 29, 2012). Policy Directive 335.00 provides that if the Unit Manager or Staff Supervisor fails to answer the G-1 grievance within the time allotted for a reply, "the inmate may file immediately a G-2 Grievance Form utilizing his/her G-1 Grievance Form copy in order to continue the grievance process." If the Warden or Administrator fails to answer to the G-2 Grievance within the time allotted for a reply, "the inmate may submit an appeal to the Commissioner/designee of the Division of Corrections within five (5) working days, excluding weekends and holidays, after . . . the time for the response has passed." The Commissioner must respond to the appeal within ten working

---

requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); *also see Yannucci v. Stansberry*, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his claims"); and *Garrison v. Stansberry*, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims.").

days. Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. Plaintiff assumed he would not receive a response and Plaintiff filed his instant Complaint. Thus, Plaintiff filed his Complaint without first exhausting his administrative remedies pursuant to the PLRA. To the extent Plaintiff is complaining about the conditions of his confinement, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies.

**2.     Heck:**

Plaintiff alleges that his constitutional rights were violated during the course of his criminal proceedings in the Circuit Court of Taylor County. Specifically, Plaintiff challenges the validity of his conviction based on the following: malicious prosecution, judicial prejudice, and ineffective assistance of counsel. Given the nature of Plaintiff's allegations, it appears that Plaintiff is implying that his conviction is invalid as a result of various constitutional violations during his criminal proceedings in the Circuit Court of Taylor County, West Virginia. Consequently, the undersigned finds that Plaintiff has failed to state a cognizable claim under Section 1983 pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing the relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

Id. at 486-87, 114 S.Ct. 2372. See also Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(holding that an arrestee's Section 1983 claim was not cognizable against state trooper, alleging unreasonable

search and seizure, under *Heck,* since judgment in arrestee's favor would have implied the invalidity of conviction). Plaintiff does not indicate that he has been successful in *habeas* proceedings. The undersigned, therefore, finds that because Plaintiff has not demonstrated that his criminal conviction has been invalidated, Plaintiff's Section 1983 claim is not cognizable pursuant to Heck. Accordingly, the undersigned respectfully recommends that the above claims be dismissed.

**3.       Judicial Immunity:**

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 80 U.S. 335, __ S.Ct. ___, 20 L.Ed. 646 (1872)." Imbler v. Patchman, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." Jackson v. Houck, 181 Fed. App'x 372, 372 (4th Cir. 2006) (quoting Mireles v. Waco, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Id. (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted). Based upon the allegations contained in the Complaint, the undersigned finds that Judge Moats is absolutely immune from suit. Plaintiff appears to argue that Judge Moats allowed his constitutional rights to be violated during his criminal proceedings and

failed to grant him credit for time served on "supervised bond." As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously and corruptly. Accordingly, Plaintiff's claim against Judge Moats must be dismissed.

**4.      Prosecutorial Immunity:**

Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)(quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509

U.S. at 272, 113 S.Ct. at 2615(quoting <u>Imbler</u>, 424 U.S. at 431, 96 S.Ct. at 995 - 996); <u>Van de Kamp</u>, 555 U.S. at 434, 129 S.Ct. at 861; <u>Dababnah v. Keller-Burnside</u>, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." <u>Shmueli v. City of New York</u>, 424 F.3d 231, 237 (2nd Cir. 2005); <u>also see</u> <u>Smith v. McCarthy</u>, 349 Fed.Appx. 851, 859 (4th Cir. 2009), <u>cert. denied</u>, ___ U.S. ___, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); <u>Brown v. Daniel</u>, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. <u>Burns</u>, 500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); <u>Imbler</u>, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing <u>Yaselli v. Goff</u>, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); <u>also see</u> <u>Brown v. Daniel</u>, 230 F.3d at 1352; <u>Lyles v. Sparks</u>, 79 F.3d 372, 377 (4th Cir. 1996); <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. <u>Imbler</u>, 424 U.S. at 429, 96 S.Ct. at 994; <u>Malley v. Briggs</u>, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471(quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The Imbler Court determined the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not

13

have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

In the instant case, Plaintiff alleges that Prosecutor Poling subjected him to malicious prosecution and false imprisonment. (Document No. 2.) As stated above, prosecutors are entitled to absolutely immune concerning their decision to initiate prosecution and in conducting bond or revocation hearings. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995(holding that "in initiating a prosecution . . . the prosecutor is immune"). The Court further finds that Prosecutor Poling is entitled to absolute immunity as his conduct was intimately associated with the judicial phase of the criminal process. See Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); Smith, 349 Fed.Appx. at 859 (a prosecuting attorney is absolutely immune for conspiring with police officers to present false testimony and for withholding exculpatory evidence as these actions are "intimately associated with the judicial process); Logan v. Laterzo, 24 Fed.Appx. 579, 581 (7th Cir. 2001)(finding prosecutors absolutely immune for allegedly delaying the criminal trial by misrepresenting the existence of a crime-scene videotape); Brown, 230 F.3d at 1351(finding that prosecutor was entitled to absolute immunity for knowingly using perjured testimony); Lyles, 79 F.3d at 377(holding that a prosecutor enjoyed absolute immunity from claims that she made false representations and suborned perjury before the grand jury); Rhodes v. Smithers, 939 F.Supp. 1256, 1269 (S.D.W.Va. Sept. 15, 1995)(District Judge Copenhaver)("[T]he presentation of false testimony in the course of a judicial proceeding is an allegation 'for which the prosecutor is afford absolute immunity.'") citing Carter v. Burch, 34 F.3d

257, 263 (4th Cir. 1994)). Accordingly, the undersigned recommends that Plaintiff's claims against Prosecutor Poling be dismissed because he is absolutely immune from suit under Section 1983.

**5.    Defendant Iapalucci:**

In his Complaints, Plaintiff contends that Defendant Iapalucci violated his constitutional rights by providing ineffective assistance of counsel. Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. The Court finds that Defendant Iapalucci was not a "state actor." It is well established that an attorney does not act under the color of state law when retained or court-appointed. Vermont v. Brillon, 556 U.S. 81, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009)("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); Polk County v. Dodson, 454 U.S. 312, 3325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980)(state-appointed counsel is not acting under color of state law), cert denied, 454 U.S. 1141, 102 S.Ct. 99, 71 L.Ed.2d 293 (1982); Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amenable to suit under § 1983."). Based on the foregoing, the undersigned finds that Plaintiff cannot pursue a Section 1983 claim against Defendant Iapalucci.

**6.    Plaintiff's Claim of Conspiracy:**

The undersigned finds that Plaintiff's conclusory allegations of a conspiracy do not establish a constitutional violation. Specifically, Plaintiff alleges that Judge Moats, Prosecutor Poling, and

Attorney Iapalucci conspired to violate Plaintiff's constitutional rights during his criminal proceedings and to falsely imprison Plaintiff. To allege a claim of conspiracy, Plaintiff must establish the following elements: (1) an agreement between two or more persons, which constitutes the act, and (2) the doing of either an unlawful act or a lawful act by unlawful means. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore, fails to state a cognizable claim. See Brown v. Angelone, 938 F.Supp. 340, 346 (W.D. Va. 1996). Plaintiff does not allege any facts to establish that the above Defendants formed an agreement to falsely imprison or improperly prosecute Plaintiff. Plaintiff's conspiracy claim, therefore, does not rise to the level of constitutional magnitude.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiffs' Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DISMISS** Plaintiffs' Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 12, 2015.

R. Clarke VanDervort
United States Magistrate Judge